**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MICHAEL PARIZEAU, | ) | CASE NO. 5:19-CV02525 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) | |
| ANDREW SAUL, | ) | |
| *Comm'r of Soc. Sec.*, | ) | **MEMORANDUM OPINION & ORDER** |
| | ) | |
| Defendant. | ) | |

Plaintiff, Michael Parizeau (Plaintiff), challenges the final decision of Defendant Andrew Saul, Commissioner of Social Security (Commissioner), denying his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. (Act). This court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to consent of the parties. (R. 10). For the reasons set forth below, the Commissioner's final decision is REVERSED and REMANDED for proceedings consistent with this opinion.

### I. Procedural History

On December 21, 2016, Plaintiff filed his applications for benefits, alleging a disability onset date of March 8, 2011. (R. 8, Transcript (Tr.) 15, 242-247).[1] The application was denied

---

[1] A previous application for disability benefits was denied after a hearing on February 12, 2016, and Plaintiff's subsequent appeal to the District Court was unsuccessful. (Tr. 101-130).

initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge (ALJ). (Tr. 131-184). Plaintiff participated in the hearing on September 25, 2018, was represented by counsel, testified, and amended his disability onset date to February 13, 2016. (Tr. 35-59, 268). A vocational expert (VE) also participated and testified. *Id*. On October 25, 2018, the ALJ found Plaintiff not disabled. (Tr. 28). On September 11, 2019, the Appeals Council denied Plaintiff's request to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1-6). On October 29, 2019, Plaintiff filed a complaint challenging the Commissioner's final decision. (R. 1). The parties have completed briefing in this case. (R. 13 & 15).

Plaintiff asserts the following assignments of error: (1) the ALJ erred in weighing the opinions of his treating physician; (2) the ALJ erred by ascribing greater weight to the opinions of State Agency physicians over the opinions of his treating provider; and, (3) the ALJ erred in evaluating his pain. (R. 13).

## II. Evidence

**A. Relevant Medical Evidence**[2]

**1. Treatment Records**

On April 1, 2016, after the alleged onset date, Plaintiff was seen by his treating physician, Jessica Bittence, M.D. (Tr. 323-326). It was noted that Plaintiff was injured in a motor vehicle accident in 2011, resulting in chronic pain. (Tr. 323). On physical examination, Plaintiff was in no acute distress. His musculoskeletal examination was as follows:

    Musculoskeletal: Gait and station. Abnormal    Digits and nails: Abnormal

---

[2] The recitation of the evidence is not intended to be exhaustive. It includes only those portions of the record cited by the parties in their briefs and also deemed relevant by the court to the assignments of error raised.

2

> Inspection/palpation of joints, bones, and muscles Abnormal.    Decreased range of motion of hip    Range of motion: Abnormal    Decreased range of motion in hip and left foot    Stability: Abnormal    Fusion of posterior foot left.    Muscle strength/tone Normal
>
> \*\*\*
>
> Neurologic: Cranial nerves 2-12 grossly intact.    Cortical function: Normal.    Deep tendon reflexes were 2+ and symmetric.    Sensation Abnormal    Numbness posterior foot    Coordination: Normal.

(Tr. 325). Dr. Bittence diagnosed chronic pain of multiple sites; and renewed Plaintiff's prescription for Oxycodone-Acetaminophen. (Tr. 325). She noted that Plaintiff had "residual inability to work due to decreased range of motion, intolerance to sit and stand, and unpredictable pain pattern." *Id*.

On July 20, 2016, Plaintiff was seen for a three-month follow-up and had just recently returned from a vacation. (Tr. 343). He was "trying to stay two pills per day and that seems to be working. Otherwise doing well. *Id*. On musculoskeletal examination, there was no joint swelling, normal movements of all extremities, and decreased ROM of the left foot and right hip, and muscle strength/tone was normal. (Tr. 345).

On January 6, 2017, Plaintiff was seen by Dr. Bittence and reported that his pain was worse, and he experienced headaches. (Tr. 339). On musculoskeletal examination, there was no joint swelling, normal movements of all extremities, decreased ROM in left ankle and right hip, and normal muscle strength/tone. (Tr. 341). Neurologic examination revealed normal reflexes, but left lower leg sensory was "very irritated." *Id*. Dr. Bittence wrote that Plaintiff presented with "more of a complex regional pain syndrome picture." (Tr. 342).

On May 17, 2017, Plaintiff told Dr. Bittence his pain was neither worse nor better. (Tr. 427). On musculoskeletal examination, gait and station were normal, there was no joint swelling,

muscle strength was normal, and there was normal movements of all extremities. (Tr. 429). However, Plaintiff's digits and nails were abnormal, and there was decreased ROM in left ankle and right hip. *Id*. Dr. Bittence diagnosed suprapubic abdominal pain and arthralgia. (Tr. 430). She renewed Plaintiff's Percocet prescription. *Id*. Dr. Bittence noted that Plaintiff had been to pain management, and tried a variety of medications without much relief. (Tr. 431).

On September 20, 2017, Dr. Bittence noted Plaintiff was taking three pain pills a day for his chronic right hip and left heel pain, and that his medications were stable. (Tr. 421). On musculoskeletal examination, there was no joint swelling, normal movements of all extremities, normal ROM, and normal muscle strength/tone. (Tr. 424). He was diagnosed with multiple problems, including arthralgia and closed foot fractures. (Tr. 424).

On December 15, 2017, Plaintiff was seen for a three-month follow-up by Dr. Bittence prior to a planned trip to Florida. (Tr. 413). On musculoskeletal examination, Plaintiff's gait and station were abnormal, his ROM were decreased due to unchanged ankle and hip pain, but ROM was otherwise normal. There were normal movements of all extremities, normal muscle strength/tone, and no joint swelling. (Tr. 415-416).

On March 14, 2018, Plaintiff reported no change in his condition (Tr. 454). On musculoskeletal examination, Dr. Bittence noted Plaintiff had a limp, that the right hip was tender to palpation, that ROM was abnormal, and that muscle strength/tone were normal. (Tr. 456). Plaintiff reported some crunching and popping in the right hip joint, but no difficulty walking, no headaches, no limb weakness, no numbness, and no tingling. (Tr. 454). Dr. Bittence noted Plaintiff's chronic pain, and that Plaintiff had been to an orthopedist but was not a surgical candidate. (Tr. 457).

On June 13, 2018, Plaintiff was seen for a follow-up of chronic opioid management, which

had been prescribed for left foot pain and right hip pain. (Tr. 465). Plaintiff described his pain as dull and aching, but constant. *Id*. Plaintiff reported exacerbating factors were weight bearing, use of the extremity, lifting, bending, twisting, standing and sitting. *Id*. On musculoskeletal examination, inspection/palpation of joints, bones, and muscles was abnormal; ROM was abnormal; and, muscle strength/tone were normal. (Tr. 468). Dr. Bittence's diagnoses included chronic pain of multiple sites and complex regional pain syndrome. *Id*.

### 2. Medical Opinions Concerning Plaintiff's Functional Limitations

On January 17, 2017, Dr. Bittence completed a checklist-style medical source statement. (Tr. 368-369). She limited lifting/carrying to a maximum of 5 to 10 pounds frequently and 10 to 20 pounds occasionally, noting Plaintiff's lower extremity weakness and contracture. (Tr. 368). She indicated Plaintiff's ability to stand/walk was affected by his impairments, but did not specify the extent of his abilities or limitations. *Id*. Dr. Bittence did note that limitations were caused by lower extremity instability, weakness, and contracture. *Id.* She further opined that Plaintiff was able to sit for four hours in an 8-hour workday in one to two-hour increments due to hip pain with prolonged sitting and chronic hip pain "due to fracture." *Id*. Dr. Bittence believed Plaintiff could rarely perform any postural activities. *Id*. She limited Plaintiff to frequent reaching, pushing/pulling, fine manipulation, and gross manipulation despite noting "N/A" as far as findings that would support such limitations. (Tr. 369). She further indicated Plaintiff had been prescribed a cane, brace, and TENS unit. *Id*. Dr. Bittence checked a box indicating Plaintiff needed the option to alternate between sitting and standing at will due to Plaintiff being "very uncomfortable." *Id*. She assessed his pain as moderate, and checked boxes indicating that his pain interferes with concentration, takes a person off-task, and causes absenteeism. *Id*. She believed Plaintiff needed to elevate his legs to both 45 and 90 degrees, and required two to three

5

additional fifteen-minute breaks. *Id*.

On February 1, 2017, State Agency physician Leon Hughes, M.D., completed a physical RFC assessment adopting the RFC from the prior ALJ's decision, dated February 12, 2016, pursuant to Acquiescence Ruling ("AR") 98-4. (Tr. 141). The RFC from that decision limited Plaintiff as follows: "light work as defined in 20 C.F.R. § 404.1567(b) except the claimant can no more than occasionally operate foot controls with the left lower extremity;" only occasional climbing of ramps/stairs and never ladders/ropes/scaffolds; only occasional balancing, kneeling, crouching, and crawling; frequent stooping; avoidance of even moderate exposure to moving mechanical parts and unprotected heights; and, a sit/stand at will option with no loss of production. (Tr. 141, 110).

On May 10, 2017, State Agency physician Stephen Sutherland, M.D., wrote that the prior ALJ's RFC was not be adopted due to the then-pending federal litigation on the issue. (Tr. 156). From February of 2013 to the date of the opinion, Dr. Sutherland opined that Plaintiff could occasionally lift 20 pounds and frequently lift 10 pounds, and he could stand/walk and sit for six hours each in an 8-hour workday. (Tr. 154). Plaintiff was limited to occasional operation of pedals with the left lower extremity. *Id*. Dr. Sutherland further opined that Plaintiff could frequently balance and stoop, but only occasionally kneel, crouch, crawl, or climb ramps/stairs. (Tr. 155). Plaintiff had to avoid even moderate exposure to workplace hazards. *Id*.

On February 28, 2018, Dr. Bittence completed another checklist-style medical source statement. (Tr. 452-453). She limited lifting/carrying to a maximum of 10 pounds frequently and 20 pounds occasionally, noting Plaintiff's decreased mobility of the left ankle/heel and limited range of motion of the right hip. (Tr. 452). She opined Plaintiff could stand/walk a total of four hours in an 8-hour workday in less than one-hour increments,

6

indicating that remote trauma and surgery limits movement. *Id*. She further opined that Plaintiff was able to sit for two to four hours in an 8-hour workday for less than one hour at a time due to hip pain with prolonged sitting due to hip fracture. *Id*. Dr. Bittence believed Plaintiff could now balance occasionally, but all other postural activities had deteriorated to "never." *Id*. The postural restrictions were based on decreased range of motion in the lower extremity and instability. *Id*. She reduced Plaintiff's ability to "occasional" with respect to reaching, pushing/pulling, fine manipulation, and gross manipulation despite noting that Plaintiff's "upper extremity was not affected." (Tr. 453). She further indicated Plaintiff had been prescribed a cane, walker, brace, and TENS unit. *Id*. Dr. Bittence checked a box indicating Plaintiff needed the option to alternate between sitting and standing at will due to "[g]ood days/bad." *Id*. She assessed his pain as moderate but chronic, and checked boxes indicating that his pain interferes with concentration, takes a person off-task, and causes absenteeism. (Tr. 453). She no longer believed Plaintiff needed to elevate his legs, but continued to require two to three additional breaks. *Id*. She noted Plaintiff had "unpredictable pain patterns." *Id*.

**B. Relevant Hearing Testimony**

The ALJ posed the following hypothetical question to the VE:

For the first hypothetical, please consider an individual that can lift, carry, push, and pull 20 pounds occasionally, and ten pounds frequently.

This person can sit for six hours, stand and/or walk for six hours in a normal workday.

This person can occasionally operate foot pedals with the left lower extremity.

This person cannot climb ladders, ropes, or scaffolds, and can occasionally climb ramps and stairs.

This person can frequently balance, and stoop.

7

> This person can occasionally crouch, crawl, and kneel.
>
> This person must avoid workplace hazards such as unprotected heights, or exposure to dangerous moving machinery.
>
> This person would be limited to simple, routine tasks that do not involve arbitration, negotiation, or confrontation.
>
> This person cannot perform piece rate work, or assembly line work.
>
> This individual would be limited to occasional interaction with others.

(Tr. 54-55).

The VE testified that such an individual could not perform an assembly line job, but identified the following examples of light exertional level jobs that the hypothetical individual could perform: assembler of small products, Dictionary of Occupational Titles ("DOT") 739.687-030 (217,000 jobs nationally); inspector and hand packager, DOT 559.687-074 (235,000 jobs nationally); and, gluer, DOT 795.687-014 (185,000 jobs nationally). (Tr. 55-56). In response to a question posed by the ALJ, the VE testified that an individual is unemployable if he or she is off-task 25 percent of the time. (Tr. 56). The VE indicated his testimony was consistent with the DOT. *Id*.

Plaintiff's counsel posed a hypothetical question to the VE that altered the first hypothetical posed by the ALJ as follows: "standing and walking should be limited to two hours a day; sitting can be done up to six hours a day, and when in the sitting position should elevate the left leg to 45 to 90 degrees." (Tr. 57). The VE indicated that "the elevation can be an issue… but I have clients when we elevate legs, we can do it about the level of a step stool. At the angle that you described, we would need to bring in an engineer and *accommodate* the workplace so that they would be able to work while having their foot elevated." (Tr. 57) (emphasis added). Finally, the VE testified that employers would tolerate no more than two absences, tardies, or leaving early

8

per month. *Id*.

### III. Disability Standard

A claimant is entitled to receive benefits under the Social Security Act when he establishes disability within the meaning of the Act. 20 C.F.R. § 404.1505 & 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when he cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) and 416.905(a); 404.1509 and 416.909(a).

The Commissioner determines whether a claimant is disabled by way of a five-stage process. 20 C.F.R. § 404.1520(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time he seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that he suffers from a medically determinable "severe impairment" or combination of impairments in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits ... physical or mental ability to do basic work activities." *Abbott*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment (or combination of impairments) that is expected to last for at least twelve months, and the impairment(s) meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment(s) does not prevent him from doing past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's

impairment(s) does prevent him from doing past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g) and 416.920(g), 404.1560(c).

### IV. Summary of the ALJ's Decision

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act (the "Act") through December 31, 2018. This finding adheres to that of the previous decision.

2. The claimant has not engaged in substantial gainful activity since February 13, 2016, the alleged onset date (20 CFR 404.1571 *et seq*.). This finding departs from that of the previous decision, but only insofar as it reflects the alleged onset date for the present claim.

3. The claimant has the following severe impairments: osteoarthritis of the right hip, status-post open reduction, internal fixation surgery, left ankle fracture, status-post open reduction, internal fixation surgery, complex regional pain syndrome of the lower left extremity, depressive disorder [diagnosed as persistent depressive disorder] and an anxiety disorder [diagnosed as other specified anxiety disorder] (20 CFR 404.1520(c)). This finding departs from that of the previous decision, in order to account for the severe impairments documented in the present evidentiary record.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). This finding adheres to that of the previous decision.

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that the claimant may occasionally operate foot controls with the lower left extremity; the claimant may frequently balance and stoop, may occasionally crouch, crawl, kneel, climb ramps and stairs, but may never climb ladders, ropes or scaffolds; the claimant must avoid all exposure to workplace hazards, including unprotected heights or dangerous moving machinery; the claimant is limited to the performance of simple, routine tasks that do not involve arbitration, negotiation, or confrontation, undertaken in a work setting free of "piece-rate" work or assembly line work, which setting requires no more than occasional

        interaction with others. This finding departs from that of the previous decision, in order to accommodate the current state of the impairments as documented in the current evidentiary record.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565). This finding adheres to that of the previous decision.

7. The claimant was born on ***, 1970 and was 45 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563). [T]his finding departs from that of the previous decision, but only insofar as it reflects the claimant's attainment of greater chronological age.

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564). This finding adheres to that of the previous decision.

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568). This finding adheres to that of the previous decision, but on different grounds.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a). This finding adheres to that of the previous decision.

11. The claimant has not been under a disability, as defined in the Social Security Act, from February 13, 2016, through the date of this decision (20 CFR 404.1520(g)). This finding departs from that of the previous decision, but only insofar as it reflects the alleged onset date for the present claim.

(Tr. 17-18, 20, 26, 27)

## V. Law and Analysis

**A. Standard of Review**

Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look

into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. (*Id.*) However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

**B.  Plaintiff's Assignments of Error**

**1. Opinions of Treating Physician Dr. Bittence**

In the first assignment of error, Plaintiff argues the ALJ erred in rejecting portions of the opinions of Dr. Bittence, his treating physician. (R. 13, PageID# 561-566). The Commissioner does not challenge Plaintiff's assertion that Dr. Bittence was a treating physician (R. 15), and the ALJ's decision expressly refers to her as Plaintiff's primary care physician who started treating him before the alleged onset date. (Tr. 23-24). Nevertheless, the Commissioner asserts the ALJ provided good reasons, supported by substantial evidence, for discounting Dr. Bittence's conclusions. (R. 15, PageID# 585).

"Provided that they are based on sufficient medical data, 'the medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference.'" *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240

12

(6th Cir. 2002) (quoting *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985)). In other words, "[a]n ALJ must give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in the case record.'" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (*quoting* 20 C.F.R. § 404.1527(d)(2)). If an ALJ does not give a treating source's opinion controlling weight, then the ALJ must give "good reasons" for doing so that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *See Wilson*, 378 F.3d at 544 (*quoting* Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *5).

The "clear elaboration requirement" is "imposed explicitly by the regulations," *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 400 (6th Cir. 2008), and its purpose is "in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that [her] physician has deemed [her] disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Wilson*, 378 F.3d at 544 (*quoting Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)). "An example of a good reason is that the treating physician's opinion is 'unsupported by sufficient clinical findings and is inconsistent with the rest of the evidence.'" *Conner v. Comm'r of Soc. Sec.*, 658 Fed. App'x 248, 253-254 (6th Cir. 2016) (*citing Morr v. Comm'r of Soc. Sec.*, 616 Fed. App'x 210, 211 (6th Cir. 2015)); *see also Keeler v. Comm'r of Soc. Sec.*, 511 Fed. App'x 472, 473 (6th Cir. 2013) (holding that an ALJ properly discounted the subjective evidence contained in a treating physician's opinion because it too heavily relied on the patient's complaints).

Plaintiff specifically takes issue with the ALJ's decision not to include a sit/stand at-will option, and a need for extra breaks as set forth in two separate opinions authored by Dr. Bittence in January of 2017 and February of 2018. (R. 13, PageID# 562-563). Because it is not in dispute that Dr. Bittence professionally treated Plaintiff in her capacity as a physician, the ALJ was obligated to provide good reasons for rejecting limitations contained in two separate medical source statements to the extent they were inconsistent with the RFC. The decision addressed these opinions from Dr. Bittence as follows:

> The claimant's primary care physician, Jessica Bittence, M.D., offered two opinions of physical function and one opinion of psychological function. On January 17, 2017, Dr. Bittence indicated that the claimant could perform lifting and carrying consistent with the sedentary-to-light exertional level, that he would have [unspecified] limitations standing and walking and could sit four of eight hours, that he could rarely climb, balance, stoop, crouch, kneel, crawl, would need to sit or stand at will, that his moderate pain would decrease concentration, increase "off-task" and "absentee" behaviors, that he would need to elevate his legs at will and would require two additional fifteen minute breaks every two-to-three hours. On February 28, 2018, Dr. Bittence indicated that the claimant could lift and carry at the light exertional level, could never bend or squat, could stand and/or walk for four of eight hours and sit for two-to-four hours, each in increments of less than one hour, that he could never climb, stoop, kneel, crouch, crawl, could occasionally balance, occasionally reach, handle and finger, push and pull with the upper extremities, that he would need to sit or stand at will, that moderate pain would affect his concentration, on task behavior and absenteeism, that he would need two-to-three additional breaks per day but would no longer need to elevate his legs at will. Dr. Bittence has treated the claimant since before the alleged onset date, has seen the claimant every two or three months since the inception of this claim and is reporting within the bounds of her professional certifications, albeit she is a primary care physician, rather than a pain specialist or neurologist. However, the basis for these limitations are pain, weakness and contracture of the lower extremities. Her treatment record does not reflect weakness or contracture (B1F/3), (B2F/3,7), (B6F/12), (B10F/4). Her treatment record does not reflect pain, as her treatment notes invariably describe the claimant as in no acute distress (B2F/l l,7,3), (B6F/17,l l,3), (B8F/3), (B10F/3). Her treatment notes reflect that the claimant attends as and when appointed, is able to assist in his own treatment, and without discernible agitation or restlessness, such that there is no objective basis for her opinions on the need for a sit or stand option. There is no discernible explanation for the reversal on her opinion regarding the need to elevate the claimant's legs, as she has conceded in

>her treatment notes the claimant's condition is stable (B10F/2), and neither better nor worse (B6F/15). She has imposed manipulative limitations in the second of these opinions, while conceding that the claimant's impairments have no effect whatever on his upper extremities (B7F/2). The opinions are not consistent with Dr. Bittence's own treatment records, and so cannot be considered for assignment of controlling weight. Otherwise, and because she has identified the need of exertional and postural limitations, her opinion is at least partially consistent with, and supported by, the overall evidence of record, described in digest form in the analysis of the opinions of Drs. Hughes and Sutherland, above, even if largely by happenstance. For this reason, these opinions are afforded partial weight.

(Tr. 23-24).

The ALJ essentially gives three reasons for rejecting portions of Dr. Bittence's opinion: (1) treatment records do not reflect weakness or contracture; (2) treatment records do not reflect pain, as treatment notes describe the claimant as in "no acute distress," and (3) the claimant attends appointments without discernible agitation or restlessness. (Tr. 24). On this basis, the ALJ concludes that "there is no objective basis for [Dr. Bittence's] opinions on the need for a sit or stand option." *Id*.

The ALJ correctly notes that treatment notes typically indicate normal muscle strength and tone (*i.e.* no weakness). (Tr. 24, *citing* Tr. 325, 341, 345, 424, 468). Most of these same treatment notes also routinely note abnormal gait or ROM. (Tr. 325, 341, 345, 468). The ALJ appears to make the unfounded medical assumption that an individual with normal muscle strength and tone would not need a sit/stand at-will option. In addition, as the Sixth Circuit has long recognized, "pain alone," if caused by a medical impairment, may be severe enough to constitute a disability. *Dozier v. Astrue*, 2012 U.S. Dist. LEXIS 85153, 2012 WL 2344163, *5 (N.D. Ohio, Nov. 19, 2012) (*citing Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981), *cert. denied*, 461 U.S. 957, 103 S. Ct. 2428, 77 L. Ed. 2d 1315 (1983)). Therefore, normal muscle strength alone does not constitute a good reason for rejecting the

15

sit/stand option where chronic pain exists.

Further compounding the ALJ's reasoning, he appears to assume that because treatment notes indicate Plaintiff was in "no acute distress," he must not have been in pain (or pain serious enough to warrant a sit/stand option). Again, the ALJ is not a medical expert, but makes a medical judgment. It is well-established that administrative law judges may not make medical judgments. *See Meece v. Barnhart*, 192 Fed. App'x 456, 465 (6th Cir. 2006) ("But judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor.") (*quoting Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990)). Although an ALJ may not substitute his or her opinions for that of a physician, "an ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding." *Poe v. Comm'r of Soc. Sec.*, 342 Fed. App'x 149, 157 (6th Cir. 2009). Dr. Bittence routinely diagnosed chronic pain and prescribed opioids for Plaintiff's pain. The ALJ essentially eliminates pain as a symptom by concluding an individual with chronic pain, who may require a sit/stand option, would be noted as being in acute distress. Neither the ALJ nor the Commissioner cite any authority supporting such a conclusion. The court finds the ALJ went beyond merely assessing the evidence, and instead made medical judgments regarding the severity of symptoms he expected to see before crediting Dr. Bittence's professional opinion. As such, this court finds the ALJ failed to give good reasons for rejecting Dr. Bittence's opinion that Plaintiff required a sit/stand at-will option.

The final reason given by the ALJ for rejecting a sit/stand limitation—Plaintiff's ability to attends doctor's appointments without displaying agitation or recklessness—does not constitute a good reason for rejecting a treating physician's opinion under the facts of this case. The court agrees with the Plaintiff that Plaintiff's ability to attend appointments with Dr. Bittence every

three months offers little, if any, insight as to Plaintiff's need to change positions during an eight-hour workday. The ALJ fails to explain how Plaintiff's quarter-annual doctor visits undermine Dr. Bittence's opinion as to the severity and limiting effects of Plaintiff's pain. *See Walston v. Gardner*, 381 F.2d 580, 586 (6th Cir. 1967) ("[t]he fact that [a claimant] can still perform simple functions, such as driving, grocery shopping, dish washing and floor sweeping, does not necessarily indicate that this [claimant] possesses an ability to engage in substantial gainful activity. Such activity is intermittent and not continuous, and is done in spite of the pain suffered by [claimant]"); *accord Lucky v. Astrue*, No. 5:12CV1888, 2013 U.S. Dist. LEXIS 71260, at *46-47 (N.D. Ohio Apr. 29, 2013) (White, M.J.), *adopted by* 2013 U.S. Dist. LEXIS 71259 (N.D. Ohio May 20, 2013) (Boyko, J.). The ability to attend doctors' appointments, occurring even less frequently than the above activities, arguably provides even less about a claimant's ability to engage in substantial gainful activity.

While not dispositive, the court notes that the previous ALJ also found that Plaintiff needed a sit/stand option (Tr. 110), as did one of the two State Agency physicians to review the record who adopted the prior ALJ's RFC. (Tr. 141). More importantly, the ALJ determined Plaintiff was unable to perform any past relevant work. (Tr. 26). While the claimant bears the burden of proof during the first four steps, the burden shifts to the Commissioner at step five. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). At the fifth step, it is the Commissioner's burden to identify a significant number of jobs in the economy that accommodate the claimant's RFC. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).[3] "[I]f a claimant suffers from a limitation not accounted for by the grid, the

---

[3] In some cases, the Commissioner may carry the Step Five burden by applying the medical-vocational grid at 20 C.F.R. Pt. 404, Subpt. P, App. 2, which directs a conclusion of "disabled"

Commissioner may use the grid as a framework for her decision, but must rely on other evidence to carry her burden…. In such a case, the Commissioner may rely on the testimony of a vocational expert to find that the claimant possesses the capacity to perform other substantial gainful activity that exists in the national economy." *Wilson v. Comm'r of Soc. Sec.*, 378, F.3d 541, 548 (6th Cir. 2004) (citations omitted). Because neither the ALJ nor Plaintiff's counsel inquired as to the impact of a sit/stand option in conjunction with the other limitations found in the final RFC, the court has no way of determining whether the inclusion of a sit/stand option would have left a significant number of jobs in the national economy that an individual with Plaintiff's limitations could perform. Under such circumstances, the court is unwilling to find that the ALJ's failure to give good reasons for rejecting the sit/stand at-will limitations was harmless.

As a remand is necessary, the court declines to address Plaintiff's remaining assignments of error in the interests of judicial economy. On remand, the ALJ must clearly explain the weight ascribed to various medical opinions of record; and, if not fully adopted, must provide good reasons for rejecting the opinions of treating sources whose opinions are more limiting than the RFC.

---

or "not disabled" based on the claimant's age and education and on whether the claimant has transferable work skills. *Wright v. Massanari*, 321 F.3d 611, 615 (6th Cir. 2003); *Burton v. Sec'y of Health & Human Servs.*, 893 F.2d 821, 822 (6th Cir. 1990).

## IV. Conclusion

For the foregoing reasons, the Commissioner's final decision be REVERSED and REMANDED for proceedings consistent with this opinion.

s/ *David A. Ruiz*
David A. Ruiz
United States Magistrate Judge

Date: March 29, 2021